# United States Court of Appeals
# for the Federal Circuit

---

**THE BOEING COMPANY,**
*Appellant*

**v.**

**SECRETARY OF THE AIR FORCE,**
*Appellee*

---

2019-2147

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 61387, 61388, Administrative Judge J. Reid Prouty, Administrative Judge Michael N. O'Connell, Administrative Judge Richard Shackleford.

---

Decided:  December 21, 2020

---

SCOTT M. MCCALEB, Wiley Rein, LLP, Washington, DC, argued for appellant.  Also represented by SCOTT A. FELDER, CRAIG SMITH, WESLEY EDENTON WEEKS; SUZETTE DERREVERE, The Boeing Company, Arlington, VA.

CORINNE ANNE NIOSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee.  Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

MATTHEW JAMES DOWD, Dowd Scheffel PLLC, Washington, DC, for amici curiae Chamber of Commerce of the United States of America, Professional Services Council. Also represented by ROBERT JAMES SCHEFFEL.

_____

Before NEWMAN, LOURIE, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

The Boeing Company ("Boeing") appeals from the final judgment of the Armed Services Board of Contract Appeals (the "Board"). *Appeals of Boeing Co.*, ASBCA Nos. 61387, 61388, 2019 ASBCA LEXIS 87 (Mar. 18, 2019) ("*Final Judgment*"). The Board entered final judgment after denying Boeing's motion for summary judgment regarding the legends that Boeing may mark on technical data it delivers to the United States Air Force under certain government contracts. *See Appeals of Boeing Co.*, ASBCA Nos. 61387, 61388, 2018 ASBCA LEXIS 352 (Nov. 28, 2018) ("*Summary Judgment Decision*"). For the reasons explained below, we reverse the Board's denial of summary judgment, we vacate the Board's entry of final judgment, and we remand to the Board for further proceedings consistent with this opinion.

## BACKGROUND

This case involves the allocation of technical data rights between the government and a contractor that delivers technical data to the government in performance of a government contract. More specifically, it involves the legends that a contractor may mark on any such technical data pertaining to noncommercial items.

## I. Statutory and Regulatory Framework

By federal statute, the Secretary of Defense "shall prescribe regulations to define the legitimate interest of the United States and of a contractor or subcontractor in

technical data pertaining to an item or process." 10 U.S.C. § 2320 ("Rights in technical data"). Under the law, "[s]uch regulations may not impair any right of the United States or of any contractor or subcontractor with respect to patents or copyrights or any other right in technical data otherwise established by law." *Id.* at § 2320(a)(1). The statute requires that the regulations account for different scenarios in which technical data might be developed exclusively with federal funds, exclusively at private expense, or with mixed funding. *Id.* at § 2320(a)(2). For example, for items or processes developed exclusively with federal funds, the statute requires that under the regulations:

> [T]he United States shall have the unlimited right to—
>
> (i)     use technical data pertaining to the item or process; or
>
> (ii)    release or disclose the technical data to persons outside the government or permit the use of the technical data by such persons.

*Id.* at § 2320(a)(2)(A).

The Department of Defense ("DoD") has issued regulations that implement 10 U.S.C. § 2320 with respect to technical data as part of the Defense Federal Acquisition Regulation Supplement ("DFARS"), which is codified in 48 C.F.R. Chapter 2. The specific regulations most relevant to this appeal that govern the allocation of technical data rights between contractors and the government appear in DFARS parts 227 and 252.

DFARS 227.7103 addresses data rights in noncommercial items or processes. The regulation establishes four government licenses for noncommercial technical data: (1) unlimited rights; (2) government purpose rights; (3) limited rights; and (4) specifically negotiated license rights. *See* DFARS 227.7103-5(a)–(d). The regulation also mandates that the government incorporate a particular contract

clause into any contract in which noncommercial technical data will be delivered to the government.    DFARS 227.7103-6(a).  The language of that contract clause is provided in DFARS 252.227-7013, and the clause is thus referred to as the "-7013 clause."

The -7013 clause is incorporated into government contracts to address the contractor's and the government's respective rights in noncommercial technical data, as well as the contractual obligations for protecting those rights.  For example, the -7013 clause specifies that the contractor grants the government one of the four licenses enumerated in DFARS 227.7103-5.    *See* DFARS 252.227-7013(b).  The -7013 clause also makes clear, however, that the contractor retains all rights not granted to the government. *See* DFARS 252.227-7013(c).

Of particular relevance to this appeal are the marking requirements in the -7013 clause.   The -7013 clause "[r]equires a contractor that desires to restrict the Government's rights in technical data to place restrictive markings on the data, provides instructions for the placement of the restrictive markings, and authorizes the use of certain restrictive markings."   DFARS 227.7103-10(b).   The instructions and authorizations of the markings appear in paragraph (f) of the -7013 clause ("Subsection 7013(f)"), which begins:

> (f) Marking requirements.  The Contractor, and its subcontractors or suppliers, ***may only assert restrictions on the Government's rights*** to use, modify, reproduce, release, perform, display, or disclose technical data to be delivered under this contract by marking the deliverable data subject to restriction.  Except as provided in paragraph (f)(5) of this clause, ***only the following legends are authorized under this contract***: the government purpose rights legend at paragraph (f)(2) of this clause; the limited rights legend at paragraph (f)(3)

of this clause; or the special license rights legend at paragraph (f)(4) of this clause; and/or a notice of copyright as prescribed under 17 U.S.C. [§§] 401 or 402.

DFARS 252.227-7013(f) (emphases added). Subsection 7013(f) proceeds to describe the general marking instructions for conspicuously and legibly marking the appropriate legend on technical data, *see id.* at 252.227-7013(f)(1), as well as the specific authorized markings pertaining to each category of rights the government may have in technical data delivered under the contract. *See id.* at 252.227-7013(f)(2) (government purpose rights markings); *id.* at 252.227-7013(f)(3) (limited rights markings); *id.* at 252.227-7013(f)(4) (special license rights markings).

The DFARS also gives the government the "right to establish conformity of markings" on technical data delivered by a contractor. *See* DFARS 227.7103-12. Under the regulations, the government may reject "nonconforming markings." In relevant part, the regulation states:

Authorized markings are identified in [Subsection 7013(f)]. All other markings are nonconforming markings.

*Id.*; *see also* DFARS 252.227-7013(h) ("Removal of unjustified and nonconforming markings").

## II. Factual Background and Procedural History

As relevant to this appeal, Boeing entered into two contracts with the United States Air Force to provide work under the F-15 Eagle Passive/Active Warning Survivability System.[1] Both contracts require Boeing to deliver technical data to the Air Force with "unlimited rights," which means that the government has the right to "use, modify,

---

[1]    The two contracts are Contract No. F33657-01-D-0026 and Contract No. FA8634-17-C-2650.

reproduce, perform, display, release, or disclose [the] technical data in whole or in part, in any manner, and for any purpose whatsoever, and to have or authorize others to do so." *See* DFARS 252.227-7013(a)(16) (defining "unlimited rights"). It is undisputed that, notwithstanding the government's unlimited rights, Boeing retains ownership of any technical data it delivers to the government under the contracts. *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at *2.

As required by the DFARS, both contracts incorporated the -7013 clause, including the marking requirements in Subsection 7013(f).[2] In the course of its performance of the contracts, Boeing marked each technical data deliverable that it submitted to the Air Force with a legend that purports to describe Boeing's rights in the data as they pertain to third parties:

```
NON-U.S. GOVERNMENT NOTICE
BOEING PROPRIETARY
THIRD PARTY DISCLOSURE REQUIRES WRITTEN APPROVAL.
COPYRIGHT 2016  BOEING
UNPUBLISHED WORK - ALL RIGHTS RESERVED

NON-U.S. GOVERNMENT ENTITIES MAY USE AND DISCLOSE ONLY AS
PERMITTED IN WRITING BY BOEING OR BY THE U.S. GOVERNMENT
```

*See* J.A. 170. The government rejected Boeing's technical data deliverables due to the legend that Boeing placed on the data. Boeing requested a Contracting Officer Final

---

[2] One contract incorporated the November 1995 version of the clause, while the other contract incorporated the February 2014 version of the clause. For purposes of this appeal, neither party has argued that there is a meaningful difference between the 1995 version and the 2014 version. *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at *7.

Decision ("COFD") regarding the propriety of its markings, and while that request was pending, Boeing proposed an alternative legend:

```
CONTAINS TECHNICAL DATA/COMPUTER SOFTWARE DELIVERED TO THE
U.S. GOVERNMENT WITH UNLIMITED RIGHTS

Contract No._____
Contractor Name_____
Contractor Address_____

[Such portions identified by SPECIFY HOW or [ALL PORTIONS].
Copyright [Year of Creation] Boeing and/or its Supplier, as applicable.  Non-U.S.
Government recipients may use and disclose only as authorized by Boeing or the
U.S. Government.
```

J.A. 171.  The government rejected Boeing's proposed alternative legend as well.

On July 31, 2017, the Air Force issued a COFD for each of the contracts, confirming the rejection of technical data marked with Boeing's legend.  *See* J.A. 165–71, 172–78. The Procurement Contracting Officer ("PCO") found that Boeing's legend is a nonconforming marking because it is not in the format authorized by the contracts pursuant to Subsection 7013(f).  The COFDs directed Boeing to correct the markings at Boeing's expense.  *Id.*

Boeing appealed the COFDs to the Board.  Boeing moved for early summary judgment based on its position that the first sentence of Subsection 7013(f) makes clear that, as a matter of law, Subsection 7013(f) only applies to legends that restrict the government's rights in technical data.  Boeing argued that Subsection 7013(f) is categorically inapplicable to legends like Boeing's that only restrict the rights of third parties.  Boeing thus argued that Subsection 7013(f) does not apply in this case, and its legend cannot be nonconforming.

The Board denied Boeing's summary judgment motion. *See Summary Judgment Decision*, 2018 ASBCA LEXIS

352. The Board agreed with the government that, after stating the words "only the following legends are authorized under this contract," Subsection 7013(f) lists four specific legends, and it is undisputed that Boeing's legend is not one of the listed legends. *Id.* at \*5–6. In rejecting Boeing's argument that Subsection 7013(f) does not apply to legends that restrict third party rights, the Board noted that Subsection 7013(f) refers to a notice of copyright that does limit the actions of third parties. *Id.*

The parties agreed that "the Board's decision on Boeing's motion for summary judgment decided the only issue presented," and they jointly requested that the Board enter final judgment denying Boeing's appeals of the COFDs. *See Final Judgment*, 2019 ASBCA LEXIS 87, at \*1. The Board entered final judgment, and Boeing appealed to this court. We have jurisdiction under 28 U.S.C § 1295(a)(10) and 41 U.S.C. § 7107(a)(1)(A).

## DISCUSSION

The "interpretation of a contract by [the Board] is a question of law that is reviewed without deference on appeal." *England v. Contel Advanced Sys., Inc.*, 384 F.3d 1372, 1377 (Fed. Cir. 2004). The interpretation of agency regulations is also a question of law. *See Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006). And the interpretation of a contract clause in the DFARS that is incorporated into a government contract is similarly a question of law. *See Forman v. United States*, 329 F.3d 837, 841 (Fed. Cir. 2003); *Aydin Corp. v. Widnall*, 61 F.3d 1571, 1577 (Fed. Cir. 1995). "This court reviews the Board's conclusions of law without deference." *Grumman Aero. Corp. v. Wynne*, 497 F.3d 1350, 1356 (Fed. Cir. 2007) (citing *Rex Sys., Inc. v. Cohen*, 224 F.3d 1367, 1371 (Fed. Cir. 2000)).

The primary question presented in this case is the interpretation of Subsection 7013(f), which has been incorporated into Boeing's two contracts with the Air Force. We review that question *de novo*.

I

We begin, as we must, with the plain language of Subsection 7013(f). *Am. Airlines, Inc. v. United States*, 551 F.3d 1294, 1299 (Fed. Cir. 2008) ("In construing a statute or regulation, we begin by reviewing its language to ascertain its plain meaning."); *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."). The disputed language is contained in the first paragraph of Subsection 7013(f). That paragraph contains two sentences. The first sentence states:

> The Contractor, and its subcontractors or suppliers, may only ***assert restrictions on the Government's rights*** to use, modify, reproduce, release, perform, display, or disclose technical data to be delivered under this contract by marking the deliverable data subject to restriction.

DFARS 252.227-7013(f) (emphasis added). The second sentence states:

> Except as provided in paragraph (f)(5) of this clause, ***only the following legends are authorized under this contract***: the government purpose rights legend at paragraph (f)(2) of this clause; the limited rights legend at paragraph (f)(3) of this clause; or the special license rights legend at paragraph (f)(4) of this clause; and/or a notice of copyright as prescribed under 17 U.S.C. [§§] 401 or 402.

*Id.* (emphasis added). Each party contends that the plain language supports its position.

Boeing argues that there is a natural relationship between the two consecutive sentences in the first paragraph of Subsection 7013(f). According to Boeing, the first sentence clearly demonstrates the context in which Subsection 7013(f) applies: when a contractor elects to "assert

restrictions on the Government's rights." In a situation in which a contractor does not seek to restrict the Government's rights in any way, Boeing argues that Subsection 7013(f) is silent on what legends the contractor may or may not mark on its data.

The government responds that the Board correctly interpreted the second sentence of the paragraph to mean exactly what it says: "only the following legends"—*i.e.*, and no other legends—"are authorized under this contract." Thus, the government argues, a contractor may not mark the data with any legend other than those specifically enumerated in Subsection 7013(f).

When interpreting regulations, we apply the same interpretive rules we use when analyzing the language of a statute. *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015) (citing *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005)). And it is well established that, when interpreting statutes or regulations, "[t]he plain meaning that we seek to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences." *Beecham v. United States*, 511 U.S. 368, 372 (1994) (citations omitted).

Here, we have a paragraph in a regulation that contains two sentences, and a proper interpretation must give meaning to both. *See Shea v. United States*, 976 F.3d 1292, 1300 (Fed. Cir. 2020) ("[I]t is a 'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute . . . .'" (quoting *Williams v. Taylor*, 529 U.S. 362, 364 (2000))); *see also Sierra Club v. EPA*, 536 F.3d 673, 680 (D.C. Cir. 2008) *(*"It is a court's duty to give effect, if possible, to every clause and word of a statute. The same is true for regulations." (quotations and citations omitted)). The plain language of the first sentence in Subsection 7013(f) makes clear that the two sentences together are describing the way in which a contractor "may assert restrictions on the ***Government's***

*rights*."    Thus, we agree with Boeing that Subsection 7013(f) is only applicable in that context, and it is silent on any legends that a contractor may mark on its data when it seeks to restrict only the rights of non-government third parties.

Under the Board's reading, the first sentence would be entirely unnecessary to the regulation, and the scope of Subsection 7013(f) would be exactly the same even without that sentence.  If, as the Board concluded, the second sentence of Subsection 7013(f) operates to prevent contractors from placing any and all markings on technical data even if those markings have no impact on the government's rights, then Subsection 7013(f) could have simply begun with the second sentence which introduces the authorized legends.  But that is not how the regulation is written, and we cannot disregard the first sentence.  *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant' . . . . We are 'reluctant to treat statutory terms as surplusage in any setting.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *Sullivan v. McDonald*, 815 F.3d 786, 790 (Fed. Cir. 2016) ("[W]e attempt to give full effect to all words contained within that statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." (quoting *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999))).

The Board was persuaded that Subsection 7013(f) precludes even legends that restrict only third-party rights because it authorizes a "notice of copyright that would, in fact, provide notice to or limit the actions of third parties." *Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at *18.  But the fact that an authorized restriction might *also* restrict the rights of third parties in addition to the government's rights is immaterial.  It is sufficient for inclusion in Subsection 7013(f) that a notice of copyright would restrict

the government's rights, notwithstanding any other effects of the notice of copyright.  The government insists that a notice of copyright does not actually restrict the government's rights because the government automatically obtains a copyright license that is coextensive with its technical data rights license.  *See* DFARS 227.7103-4(a); DFARS 227.7103-9(a)(1).  But that argument is self-defeating; indeed, the government's need for a copyright license serves as the very indication that the government could, under certain circumstances, be subject to a suit for copyright infringement under 28 U.S.C. § 1498 if it exceeds the scope of its license.  *See Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) ("If . . . the licensee acts outside the scope [of a copyright license], the licensor can bring an action for copyright infringement." (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) and Nimmer on Copyright, § 1015[A] (1999))).  Thus, a notice of copyright is a legend that restricts the government's rights, and Subsection 7013(f)'s authorization of such a notice of copyright is consistent with our interpretation.

Our interpretation of Subsection 7013(f) also remains faithful to the overall purpose of the -7013 clause and the broader technical data rights regulations in DFARS parts 227 and 252, all of which govern the allocation of data rights between contractors and the government.  The government cites nothing in the DFARS (or anywhere else) to suggest that the DoD intended the technical data rights regulations—or specifically intended Subsection 7013(f)—to have a broader impact that could affect a contractor's relationship with third parties.

For example, the policy set forth in DFARS 227.7103-1 pertains only to the government's acquisition of rights in technical data, and limitations and restrictions on the government's rights.  *See* DFARS 227.7103-1(a) ("DoD policy is to acquire only the technical data, and the rights in that data, necessary to satisfy agency needs."); *see also id.* at

227.7103-1(c), (d).  Moreover, in describing the purpose of Subsection 7013(f), the DFARS states:

> The clause at 252.227-7013, Rights in Technical Data-Noncommercial Items . . . [r]equires a contractor that desires to restrict the Government's rights in technical data to place ***restrictive markings*** on the data, provides instructions for placement of the ***restrictive markings***, and authorizes the use of certain ***restrictive markings***.

DFARS 227.7103-10(b)(1) (emphases added).  As indicated by the added emphases, that provision uses the term "restrictive markings" three times in a single sentence pertaining to a contractor that "desires to restrict the Government's rights in technical data."  The first usage of the term "restrictive markings" indisputably refers to markings that restrict the government's rights.  Similarly, the second usage of the term "restrictive markings" is preceded by the word "the," clearly indicating that it refers back to those markings that restrict the government's rights.  And while the last usage of the term "restrictive markings" is not expressly qualified by a word to indicate that the first two usages are its antecedent, one would have to strain to read that third usage as referring to some other set of restrictive markings different from the first two usages.  The only reasonable interpretation of the provision is consistent with Boeing's argument that Subsection 7013(f) "authorizes the use of certain restrictive markings" ***for the purpose of restricting the government's rights***.

Therefore, we conclude that the plain language of Subsection 7013(f) demonstrates that it applies only in situations when a contractor seeks to assert restrictions on the government's rights.  And our interpretation is confirmed by the language of the -7013 clause and the other provisions of the technical data rights regulations in the DFARS.

II

The government makes a number of arguments—beyond the nine isolated words in the second sentence—to support its position that Subsection 7013(f) prevents contractors from marking noncommercial technical data with any legend other than those listed.  The government bases those arguments on a variety of sources, including language in Subsection 7013(f), language in other paragraphs of the -7013 clause, other technical data rights provisions in the DFARS, and the regulatory history of the technical data rights regulations.  We address many of the government's arguments below.

Regarding the language of Subsection 7013(f) itself, the government contrasts the word "marking" in the first sentence with the word "legends" in the second sentence.  But, as the government concedes, the word "marking" in the first sentence is a verb, while the word "legends" in the second sentence is a noun, and it is thus not surprising that the words are different.  Moreover, we see no evidence that the word "legends" in the second sentence of Subsection 7013(f) is anything but a synonym of the noun form of the word "markings" used elsewhere in the technical data rights provisions of the DFARS.  *See, e.g.*, DFARS 227.7103-12 ("restrictive markings").  Regardless, such a word choice is not sufficient to destroy the natural relationship between the opening sentence of the paragraph and the sentence that immediately follows it.

As for other paragraphs in the -7013 clause, the government argues that the "authorized" legends enumerated in Subsection 7013(f) are distinct from the "nonconforming markings" described in Subsection 7013(h)(2).  *See* DFARS 252.227-7013(h)(2) ("A nonconforming marking is a marking placed on technical data delivered or otherwise furnished to the Government under this contract that is not in the format authorized by this contract."); *see also* DFARS 227.7103-12(a)(1) ("Authorized markings are

identified in [Subsection 7013(f)]. All other markings are nonconforming markings."). The government argues, as the Board concluded, that legends that restrict third-party rights are necessarily "nonconforming" because they are not specifically authorized by Subsection 7013(f). *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at \*18–19 (citing DFARS 252.227-7013(h)(2), and noting "[a]ccordingly, any legend not specified in the contract is nonconforming"). But the government's argument relies on circular reasoning because it must assume, as its premise, that Subsection 7013(f) is applicable to legends that restrict only third-party rights. Yet that assumed premise is precisely the question before us in this case, and, as explained above, we disagree with it. Because we conclude that Subsection 7013(f) is ***not*** applicable to legends that restrict only third-party rights, its silence regarding any such legends is not meaningful.

The government also compares the -7013 clause to other contract clauses set forth in DFARS 252.227. For example, the government contrasts the limited number of authorized legends for noncommercial data with the more flexible rules for marking commercial data embodied in other contract clauses. *See* DFARS 252.227-7015; DFARS 252.227-7025. We agree with Boeing, however, that the legends available for contractors to restrict the government's rights in commercial data do not inform the meaning of the two sentences in Subsection 7013(f). That is particularly true because the default license rights that the government obtains in unmarked commercial data are far more limited to begin with, *see* DFARS 252.227-7015(2); DFARS 227.7102-2(a), compared to the default "unlimited rights" that the government obtains in unmarked noncommercial data. And it is the first sentence of Subsection 7013(f) that establishes that default set of rights for unmarked noncommercial data. Thus, by design, the provisions pertaining to commercial data rights do not have a counterpart to the first sentence of Subsection 7013(f), nor

do those sections require a counterpart to the second sentence.

Turning to the regulatory history, the government identifies a number of comments from the DoD that were published in the Federal Register in connection with the promulgation of the technical data rights regulations in 1995. As an initial matter, because we hold that the plain language of Subsection 7013(f) does not support the government's position, the government's reliance on regulatory history brings with it a heavy burden. *See, e.g.*, *Garcia v. United States*, 469 U.S. 70, 75 (1984) ("Only the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language."); *Massing v. Sec'y of HHS*, 926 F.2d 1133, 1135 (Fed. Cir. 1991) (holding that in order to construe the statute contrary to its plain meaning, petitioner "must show clear legislative history supporting its asserted construction"). The government's arguments in this case fail to meet that burden.

For example, the government points to comments relating to the markings that may be placed on noncommercial software pursuant to DFARS 252.227-7014(f), which is a different, albeit similar, contract clause. *See Rights in Technical Data*, 60 Fed. Reg. 33,465 (June 28, 1995). There, the DoD noted that a contractor "might consider using . . . a marking agreed to by the contracting officer, to protect its commercial interests . . . ." *Id.* But the DoD's comment related to a specific circumstance of "derivative software created by integrating commercial computer software with computer software developed with Government funds . . . ." *Id.* We decline to infer from that narrowly focused comment a general principle broadly applicable to other provisions like Subsection 7013(f).

The government also relies on regulatory history to support its argument that "the two sentences [in Subsection 7013(f)] address two separate issues," and should

therefore not limit each other.  Appellee Br. 34.  According to the government, whereas prior to the existence of Subsection 7013(f) there were multiple ways for a contractor to restrict the government's rights in technical data, the first sentence of Subsection 7013(f) established marking as the only way to restrict the government's rights and created a default rule that the government obtains unlimited rights in technical data delivered without any markings.  *Id.* at 35 (citing *Bell Helicopter Textron*, ASBCA No. 21192, 85-3 BCA ¶ 18,415 (Sept. 23, 1985)).  In contrast, the government argues, the second sentence serves a distinct purpose of eliminating confusion about the government's rights by setting forth a limited universe of authorized legends.  *Id.* at 36 (citing 60 Fed. Reg. 33465).  While we recognize the complicated history of the technical data rights regulations, and many sentences in the regulations likely address a variety of "purposes" and "issues," none of the history persuades us to drive a wedge between the two sentences in the one paragraph in Subsection 7013(f), which is essentially what the government asks us to do.

As explained, we are unpersuaded by the government's arguments.  Ultimately, the government fails to convince us to abandon what we hold to be the plain language interpretation of Subsection 7013(f).

## III

We next address the policy-based arguments presented by the parties.  Boeing asserts that the Board's interpretation of Subsection 7013(f) will have far-reaching consequences that will impair contractors' abilities to protect their rights in their technical data and threaten the willingness of technology innovators to do business with the government.  The government responds that allowing contractors unbridled freedom to mark technical data with self-created legends of their choosing is inconsistent with the DFARS and would encumber unrestricted information

with unclear markings that make it difficult for the government to exercise its license rights.

To be clear, neither party presents any policy arguments that would be sufficient to overcome the plain language of Subsection 7013(f), as explained above. In any event, we decide this case on the regulation, not policy. *See First Interstate Bank v. United States*, 61 F.3d 876, 879 (Fed. Cir. 1995) ("The government's policy argument, however, cannot override the plain language of the agreement and the implementing regulations."); *see also Artuz v. Bennett*, 531 U.S. 4, 10 (2000) ("Whatever merits these and other policy arguments  may have, it is not the province of this Court to rewrite the statute to accommodate them. We hold as we do because respondent's view seems to us the only permissible interpretation of the text—which may, for all we know, have slighted policy concerns on one or the other side of the issue as part of the legislative compromise that enabled the law to be enacted."); *Dominion Res., Inc. v. United States*, 641 F.3d 1359, 1363 (Fed. Cir. 2011) ("[T]hese policy arguments do not trump the plain language of the statute."). But our interpretation of the plain language of Subsection 7013(f) has the added benefit of alleviating some of Boeing's policy concerns.

Neither party disputes that, when a contractor delivers technical data to the government, the contractor maintains ownership of the data and at least some rights in the data. For example, in this case, both parties agree that, notwithstanding the Air Force's unlimited rights in technical data Boeing delivers, Boeing still owns those data. Our interpretation of Subsection 7013(f) allows Boeing a bare minimum of protection for the data, namely, the ability to notify the public of its ownership. A contrary interpretation would result in Boeing *de facto* losing all rights in any technical data it delivers to the government. *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at *19–20 (citing academic commentary discussing the risks of delivering unlimited rights data to the government).

The Board noted that Boeing had ample warning that its proprietary legend was not authorized under the regulations, and "[a] prudent contractor would have sought clarification prior to entering the contract, if it interpreted the clause differently." *Id.* The government echoes that sentiment by arguing that Boeing should have negotiated "special license rights" as envisioned by Subsection 7013(f)(4). But the special license is reserved for "unusual situations" in which "the standard[] rights may not satisfy the Government's needs." DFARS 227.7103-5. Neither party suggests that we have that situation here. In fact, Boeing concedes that it is not attempting to provide the government with anything less than the default "unlimited rights."

Moreover, we find the logical extension of the Board's and the government's reasoning to be even more problematic. If we were to agree with the government and the Board that Boeing should have foreseen this dispute and negotiated special contract provisions up front, we can easily envision that every contractor will be incentivized to negotiate a special license rather than submitting to the standard provisions set forth in the DFARS contract clauses. At that point, the special license would cease to be "special" and the standardized contract clauses would no longer be useful. The technical data rights regulations, and specifically the contract clauses provided in the DFARS, are intended to avoid such a result.

Turning to the government's policy arguments, we are not persuaded that allowing contractors to mark technical data with proprietary legends will lead to an epidemic of confusion that would broadly prevent the government from exercising its license rights under government contracts. Neither party provided us with a clear explanation why this issue has never before arisen since Subsection 7013(f) was put in place in 1995. *See* Oral Arg. at 12:14, 25:13, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=19-2147_11042020.mp3. But Boeing represented that it has

been marking noncommercial technical data with proprietary legends under government contracts since as early as 2002 without objection from any government contracting officer. *See* Oral Arg. at 12:59; J.A. 220–21. The government was unable to counter that representation with compelling evidence that confusion from unclear markings has created serious burdens for the government. Even the Board found the government's evidence on this point, which consisted of one declaration from one first-line supervisor in Georgia, to be tenuous at best. *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at \*13–14. Moreover, in this case, Boeing offered to compromise by marking its data with a legend that would have removed all confusion by explicitly acknowledging the government's "unlimited rights," yet the government rejected that offer. Under these circumstances, we do not find that the government's policy concerns are sufficiently problematic to impact our interpretation of the plain language of Subsection 7013(f).

## IV

Finally, we must address the government's argument that Boeing's legend does, in fact, restrict the government's rights. As explained above, if the legend does restrict the government's rights, then it is improper because it fails to conform to the authorized legends of Subsection 7013(f). In contrast, if it does not restrict the government's rights, then it is proper because it is not subject to the requirements of Subsection 7013(f).

The PCO found that Boeing's proprietary legend "does restrict the Government's rights as it will restrict the distribution of the data and allows Boeing to be an authority for its further use and disclosure." J.A. 175. The Board, on the other hand, noted that:

> The Air Force further contends that "'[a]uthorizing' a third party to use and distribute the data, as Boeing purports to require, would be highly

> burdensome on the Government and, therefore [would be] inconsistent with its unlimited rights" . . . .   Despite this contention, the [-7013] clause speaks of this very thing, defining unlimited rights to mean "rights to use, modify . . . and to have or <u>authorize others</u> to do so." DFARS 252.227-7013(a)(16).

*Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at *15.

As this is a factual question, we review the Board's decision with deference.  *See* 41 U.S.C. § 7107.  By statute:

> [T]he decision of the agency board on a question of fact is final and conclusive and may not be set aside unless the decision is—
>
> (A) fraudulent, arbitrary, or capricious;
>
> (b) so grossly erroneous as to necessarily imply bad faith; or
>
> (C) not supported by substantial evidence.

*Id.*; *see also J.C. Equip. Corp. v. England*, 360 F.3d 1311, 1315 (Fed. Cir. 2004) ("Under the Contract Disputes Act, however, Board decisions on factual questions are final unless, among other things, they are not supported by substantial evidence.").

In light of that statutory framework for our review, before we can reach the merits of the parties' arguments about the factual dispute over whether Boeing's proprietary legend restricts the government's rights, we must first determine whether the Board made a "decision" on that factual question.  If the Board did not reach that factual question then, quite simply, we have nothing to review on appeal.

To be sure, the Board expressed doubt that Boeing's proprietary legend places any meaningful restrictions on

the government's rights. *See Summary Judgment Decision*, 2018 ASBCA LEXIS 352, at \*15. But the Board did so only to the extent that it found there was a live dispute between the parties in this case. *See id.* What the Board did not do, and what Boeing's summary judgment motion could not have asked the Board to do, was resolve factual disputes between the parties over whether Boeing's legend does or does not restrict the government's rights. The Board may not resolve such factual disputes at the summary judgment phase. *See id.* at \*5–6 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Therefore, although we reverse the Board's denial of summary judgment with respect to the legal proposition set forth in Subsection 7013(f), an unresolved factual dispute remains between the parties regarding whether Boeing's proprietary legend, in fact, restricts the government's rights. As the reviewing appellate court, we are not in a position to resolve that dispute, and we must remand the case to the Board.

## CONCLUSION

We have considered the parties' remaining arguments but we find them unpersuasive. Therefore, we reverse the Board's denial of summary judgment with respect to the interpretation of Subsection 7013(f), we vacate the Board's entry of final judgment, and we remand the case to the Board for further proceedings consistent with this opinion.

## REVERSED, VACATED, AND REMANDED

### COSTS

Costs to Boeing.