**Ernest D. LEHMAN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–162.

United States Court of Veterans Appeals.

Argued Dec. 12, 1990.

Decided July 1, 1991.

Rick Surratt (non-attorney practitioner), with whom Edward R. Heath, Sr., St. Petersburg, Fla., was on the brief, for appellant.

John D. Lindsay, Jr., with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before FARLEY, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

Appellant, Ernest D. Lehman, appeals from a Board of Veterans' Appeals (BVA) decision which affirmed a 1988 rating decision which reduces his rating for post-traumatic stress disorder (PTSD) from 50 percent to 30 percent. *Ernest D. Lehman,* loc. no. 933225 (BVA Nov. 7, 1989). For reasons stated herein, we reverse the BVA's decision and direct that the 50–percent rating be reinstated retroactive to November 1, 1988.

## BACKGROUND

Appellant served in Vietnam from January 1969 to March 1970. He was first assigned as an ammunition truck driver. His convoy was frequently exposed to snipers and mines and was often required to travel through villages at high rates of speed. In May 1969, appellant was assigned to the 25th Infantry Division at Cu Chi where his duties primarily involved night ambushes.

In July 1969, appellant, along with other members of his unit, was wounded by a command-detonated mine consisting of a booby-trapped 105–mm. Howitzer round. Appellant received severe lacerations to his right shoulder and jaw and was hospitalized for five weeks. He was the only member of his unit who was able to return to duty. R. at 136. Upon his return, appellant was assigned as a company supply clerk. He now alleges that a "nervous and anxious" feeling began to develop at that time. *Id.* He was then transferred to an artillery unit and was assigned as a bunker sergeant. His duties there required a "top secret" security clearance. R. at 137.

Appellant returned from Vietnam in March 1970 but his discharge was delayed for a month due to treatment for hyperalertness. R. at 137. Between 1970 and 1974, he floated from job to job and began to show a pattern of quitting jobs due to an inability to get along with people. However, appellant eventually received training for machine shop work and was then able to obtain a position as an assembly line operator. *Id.*

Appellant was married in 1977 and divorced approximately three and one half years later. Following the divorce, he began to experience extreme feelings of loneliness, PTSD-related flashbacks, nightmares, periods of rage and extreme anger and more significant problems with anxiety. He also began to drink heavily. R. at 138.

Appellant was voluntarily admitted to a psychiatric unit at a private hospital on October 29, 1983, because he felt confused and had difficulty functioning. R. at 41. Medical records indicate that he was previously hospitalized for alcoholism in July 1983. During his October 1983 hospitalization, he was diagnosed as having dysthymia (morbid anxiety and depression marked by obsession), atypical anxiety disorder, history of alcohol dependence, occupational problems, chronic PTSD and interpersonal problems. R. at 45. He underwent psychotherapy and psychopharmacotherapy while hospitalized. He was discharged on December 13, 1983 and given a prescription for Xanax, a psychotropic prescription drug used to treat schizophrenia. R. at 45. Lehman was readmitted to the same hospital in February 1984 (R. at 46–51, September 1984 (R. at 52–57), May 1985 (R. at 58–61, 66, 69–70), July 1985 (R. at 62–65, 67–68), August 1985 (R. at 71–75), May 1986 (R. at 76–87) and July 1986 (R. at 88–102), complaining each time that he felt "out of control" and unable to function. Each time, his symptoms were attributed to PTSD.

In October 1984, appellant made a claim for service connection for his psychiatric condition. (This claim was an amendment to an original claim for disability compensation, which is not the subject of this appeal, filed on November 2, 1983.) On appeal to the BVA, he submitted thorough documentation of his hospitalization and treatment for his psychiatric condition. The BVA requested that the Veterans' Administration (now Department of Veterans Affairs) (VA) Director of Mental Health and Behavioral Sciences Service (Director) provide a reconciliation of diagnoses. The Director found that appellant was subjected to "significant and life threatening stressors" while in Vietnam, R. at 106, that the diagnosis of PTSD was supported by the evidence of record and that appellant's psychiatric disorder had its onset during service. R. at 105. The Director concluded that appellant suffered from delayed, chronic PTSD, atypical anxiety disorder and that his alcohol abuse had improved. R. at 105.

The BVA concurred with the Director's findings and granted the appellant's claim for service connection for PTSD, relating back to November 2, 1983, with a disability rating of 50 percent. R. at 121.

Appellant was re-examined by a VA psychiatrist in May 1988. That physician found that appellant was suffering from a very mild form of PTSD and classified him as having an Axis II personality disorder. Based on this examination, appellant's rating for PTSD was reduced to 30 percent, effective on November 1, 1988. He appealed the reduction to the BVA. In support of his claim, appellant submitted additional medical records from recent hospitalizations and a letter from his treating psychologist, William E. Calvert, Ph.D., which assessed his condition as "particularly severe". R. at 132–39. The rating board, by decision dated February 1, 1989, confirmed the 30-percent rating.

Appellant appealed to the BVA and submitted a letter detailing his problems with the 1987 VA exam and his day-to-day difficulty in dealing with life. Additionally, appellant's treating psychologist submitted a current evaluation of his psychiatric condition and included information regarding appellant's substantial lost time and wages resulting from his PTSD. R. at 158–60.

The BVA denied appellant's claim. It found that his PTSD produced no more than "a definite industrial impairment, as contemplated by the present thirty percent rating." *Ernest D. Lehman*, loc. no. 933225, at 7 (BVA Nov. 27, 1989). Appellant filed a timely Notice of Appeal. This Court has jurisdiction to hear the appeal pursuant to 38 U.S.C. § 4052 (1988).

## ANALYSIS

Appellant argues that the BVA failed to follow several regulatory provisions when it decided his claim. Because of the complex nature of PTSD cases, and because this Court has yet to address, in an in-depth manner, the process for evaluating claims for service connection for PTSD, the application of several of the regulatory provisions cited by appellant merits its own discussion.

Initially, appellant argues that the BVA failed to evaluate his case under 38 C.F.R. § 3.344 (1990) (stabilization of disability evaluations). Paragraph (a) of that section provides, in pertinent part, that:

[r]atings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.

Thus, appellant contends that under this regulation, his rating cannot be reduced after one examination because the evidence submitted does not show a sustained improvement in his condition. In response, the VA argues that § 3.344 is inapplicable here because that regulation is applicable only to ratings which have been in effect for at least five years. Br. at 2. *See* 38 C.F.R. § 3.344(c). Paragraph (c) of § 3.344 states that "[t]he provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more). They do not apply to disabilities which have not become stabilized and are likely to improve." The use of parentheses suggests that the five year time frame is merely a guideline, not a mandate; the regulation is devoid of any language which could be construed as intended to establish an inflexible mandatory minimum time period. That is an even more appropriate interpretation in this case where appellant's rating has been in existence, even if the Secretary's argument is accepted, for four years and either 363 or 364 days. Surely the drafters of § 3.344 did not intend that the time period suggested—"(5 years or more)"—be strictly applied. In fact, in appellant's case, the gap can be closed by counting days rather than years and taking into account leap years in 1984 and 1988.

Even if the regulation was so narrowly construed as to require that the rating be in effect for five years or more, it appears that the disability for which appellant receives compensation was in existence for five years. During oral argument, it was brought to the Court's attention that, although the veteran was hospitalized for PTSD on October 29, 1983, his 100–percent rating for hospitalization was only retroactive to November 2, 1983. R. at 122. Since the VA has granted the veteran service connection for PTSD retroactive to his first period of hospitalization, the effective date should have been October 29, 1983, the date on which the veteran was first hospitalized. *See* 38 C.F.R. § 4.29 (1990) (Ratings for service-connected disabilities requiring hospital treatment or observation.) Therefore, we find that appellant's rating had "continued for [a] long period[ ] [of time] at the same level" when the reduced rating became effective on November 1, 1988. 38 C.F.R. § 3.344(c). It should also be noted that the 1988 VA medical report (R. at 123), the August 1988 rating decision (R. at 127) and the Statement of the Case (R. at 142) erroneously state that the appellant's PTSD rating had only been in effect since July 1, 1986.

The VA's argument that § 3.344 does not apply because appellant's condition had never been diagnosed as "unlikely to improve" contradicts the evidence of record. Br. at 21. The record is replete with discharge summaries which indicate that appellant's condition upon discharge was barely functional and that he would need continued treatment on an outpatient basis to maintain a minimal level of capacity. More importantly, neither the 1988 evaluation nor the BVA decision discuss or contain evidence of an improvement in appellant's condition as required by § 3.344. If the 1988 examination raised some question regarding a change in prognosis or the possibility of improvement, a more appropriate course of action would be to continue the rating pending re-examination at a later date. *See* 38 C.F.R. § 3.344(b).

Appellant further alleges that the VA failed to follow proper procedures for rating disabilities as set forth in 38 C.F.R. §§ 4.1, 4.2 (1990). Section 4.1 states that "it is thus essential, both in the examination and in the evaluation of disability, that each disability be reviewed in relation to its history." A review of the 1988 VA medical

examination reveals a brief recitation of appellant's psychiatric history. However, there is nothing in that report which would indicate that his psychiatric history, current treatment and therapy, and medical diagnoses were factors in the evaluation process. In fact, the report does not even mention the 1986 evaluation by the VA Director of Mental Health and Behavioral Sciences Service. Despite these omissions, the BVA found that the report was satisfactory.

Section 4.2 also provides guidance for assessing conflicting medical reports. It states, in pertinent part, that:

> [i]t is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.

In this case, the 1988 report differs drastically from all other reports of record in that the examiner concluded that appellant suffered mainly from an Axis II personality disorder and only a very mild form of PTSD. Yet, again, neither the rating board nor the BVA sought to reconcile the 1988 report with appellant's previous medical and psychiatric history, with the 1986 report from the VA Director of Mental Health and Behavioral Sciences Service which reconciled previous conflicting reports in favor of the veteran, or with the reports from his treating psychologist regarding his current status and treatment.

Appellant also alleges that the VA failed to apply 38 C.F.R. § 4.130 (1990) (evaluation of psychiatric disability). That section states that "two of the most important determinants of disability are time lost from gainful work and decrease in work efficiency." In his report submitted to the BVA, appellant's treating psychologist stated that Lehman was currently having "significant difficulty" with his employment. Appellant earned $13.00 per hour, when he worked, but had only earned $13,-000 in 1988, approximately half of which was "sick pay". Had he been able to work

the entire year, he would have earned approximately $28–30,000. The psychologist also noted that appellant's PTSD caused him great difficulty in maintaining regular and steady employment, that he was on probation and that he faced the possibility of being discharged. R. at 158. However, the BVA failed to address this evidence in the "Discussion and Evaluation" section of its opinion. Furthermore, there is no evidence in the record of an attempt by the VA, at any level, to obtain appellant's employment records. *See Littke v. Derwinski*, 1 Vet.App. 90 (1990). The BVA merely concluded that "the overall picture of the veteran's PTSD at this time shows that it produces a definite industrial impairment, as contemplated by the present 30–percent rating. The criteria for a higher rating for this disorder have not been met." *Ernest D. Lehman*, loc. no. 933225, at 7 (BVA Nov. 27, 1989). Under *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990), "a bare conclusory statement, without both supporting analysis and explanation ... is not in compliance with statutory requirements." This deficiency is made even more glaring by the fact that it was the treating psychologist who commented upon the employment difficulties resulting from the claimant's psychiatric condition. While it is not necessary to the result in this case for us to find that the comments made by appellant's treating psychologist be given "extra weight", we note that a number of other federal courts have so found. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 85 (2d Cir.1986); *Crum v. Sullivan*, 921 F.2d 642, 644–45 (6th Cir.1990).

## CONCLUSION

We find that the reduction of appellant's rating was arbitrary and capricious, particularly in light of the absence of an adequate statement of reasons or bases required by *Gilbert*. *See* 38 U.S.C. § 4061(a)(3)(A) (1988). We further find that the reduction of appellant's rating, on the basis of one inaccurate and incomplete medical report, was made without observance of 38 C.F.R. §§ 3.344, 4.1, 4.2, 4.130. 38 U.S.C. § 4061(a)(3)(D). Therefore, the

BVA decision of November 27, 1989, is reversed and it is ordered that appellant's disability rating of 50 percent be reinstated, retroactive to November 1, 1988.

*It is so Ordered.*