**Eli JOHNS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1583.**

United States Court of Veterans Appeals.

Submitted Dec. 18, 1991.

Decided Feb. 25, 1992.

As Amended May 6, 1992.

Andrew H. Marshall (non-attorney practitioner) was on the motion for appellant.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, Pamela L. Wood, Deputy Asst. General Counsel, and Stephen A. Bergquist, Washington, D.C., were on the motion for appellee.

Before KRAMER, Associate Judge.

## MEMORANDUM DECISION

KRAMER, Associate Judge:

Appellant seeks a reversal of an August 28, 1990, decision of the Board of Veterans' Appeals (BVA) denying him an "increase" in his service-connected paranoid schizophrenia from his present 70% rating to 100%. In so doing, the BVA misstated the issue in the case as one involving an increased rating rather than a reduced rating and failed to consider and correctly apply relevant law. The Court reverses and remands the case to the BVA for proceedings consistent with this decision.

### I

### Factual and Procedural Background

Appellant served on active duty with the Armed Forces from April 1967 to April 1969. R. at 1. Neither an induction nor discharge examination is contained in the record on appeal.

Effective November 1, 1976, appellant, was apparently awarded by the Veterans' Administration (now Department of Veterans Affairs) (VA) a 70% disability rating for service-connected paranoid schizophrenia. R. at 2–3. This rating was later raised to 100% effective August 9, 1980. R. at 2.

On April 4, 1987, appellant, after falling out of a tree and injuring himself, was admitted to a VA hospital where it was observed that

at time of admission [appellant had a] labile, inappropriate and euphoric affect. The [appellant] had auditory hallucinations of 'singing voices,' and appeared to be disorganized, dysarthric with delusional and fragmented thought processed. The [appellant] was laughing and singing inappropriately throughout [the] interview and it was difficult to ascertain details of recent functioning. The [appellant] reportedly per mental status examination initially had suicidal ideations.

R. at 5. During the course of his hospitalization, appellant was placed on psycho-

tropic medication and Dr. Timothy Reid noted that

> [appellant] became increasingly more appropriate with alleviation of auditory hallucinations and no evidence of further psychiatric thought processes and no further evidence of suicidal ideations throughout the period of hospitalization.

R. at 5. On May 11, 1987, when appellant was discharged, Dr. Reid recorded that "[appellant's] mental status examination ... *reveals no evidence of recurrent psychotic thought processes.*" R. at 6.

On June 12, 1987, the VA Regional Office (RO), after considering Dr. Reid's report, confirmed appellant's 100% service-connected disability rating for nervous disorder. R. at 7, 8.

Appellant was next examined on October 18, 1988, by VA Dr. Nadlall Jotwani who recorded that appellant, who told her that he had not worked since 1971, had *psychotic symptoms of auditory hallucinations along with persecutory/paranoid beliefs* and depression. R. at 10. She concluded that appellant still had a schizo-affective disorder and *cautioned that a diagnosis of bipolar affect disorder with psychotic symptoms should also be considered. R. at 10–11.*

On November 18, 1988, the RO, citing portions of Dr. Reid's 1987 hospital report and Dr. Jotwani's 1988 evaluation as evidence of improvement in appellant's condition, reduced his 100% disability rating to 70% effective February 1, 1989. R. at 13–14, 15.

On December 3, 1988, appellant, complaining of suicidal depression and of hearing voices, was admitted to a VA hospital where Dr. Adonis Amparo diagnosed him as having a bipolar disorder, mixed type, recurrent without psychosis but stated that "it is obvious that [appellant] is not able to function on account of his intermittent depression and inability to handle stressful situations." R. at 19. Dr. Amparo considered appellant to be "unemployable" when he was discharged from the hospital December 15, 1988. R. at 20.

On December 13, 1988, appellant filed a Notice of Disagreement with the Novem-

ber 18, 1988, rating decision and requested another evaluation based on his current hospitalization. In response to his request, the RO, after considering Dr. Amparo's report, issued another rating on February 6, 1989, that confirmed his 70% disability rating. R. at 25, 32.

Appellant, complaining of feeling anxious, depressed, and suicidal, was hospitalized again from March 8, 1989, to March 16, 1989. Dr. Amparo repeated his previous diagnosis of bipolar disorder, recurrent without psychosis and continued to find appellant "unemployable". R. at 39–40. The RO on May 10, 1989, refused to reinstate appellant's 100% rating and stated that "[appellant's] condition is not severe enough to prevent him from obtaining and retaining some sort of gainful occupation." R. at 45.

Appellant filed his appeal to the BVA on April 3, 1989, and, pursuant to appellant's request, a hearing was held on his claim September 1, 1989. R. at 37. At the hearing, appellant testified under oath that he heard voices, had suicidal thoughts, was socially isolated, and had been unable to obtain and retain employment since 1972. R. at 49–57. In addition, appellant's wife gave corroborating testimony on his social isolation, eccentric behavior, and his inability to hold down a job. R. at 57–64.

The BVA affirmed the RO rating decision on August 28, 1990, stating in relevant part:

> At the time of [appellant's 1987 hospital] discharge, there was no evidence of recurrent psychotic thought processes. The diagnosis were schizo-affective disorder, episodic polysubstance abuse, and history of an antisocial personality disorder.

> During his October *1988* VA examination, the veteran reported that his symptoms included *hearing voices,* loss of control, inability to sleep, inability to get along with others, mood swings, and depression ... He admitted to having *auditory hallucinations, and persecutory paranoid beliefs* ... The diagnosis was schizo-affective disorder; however, the

examiner stated that a *bi-polar affective disorder with psychotic symptoms should also be considered.* The examiner indicated that associated with the veteran's manic phases were periods of grandiosity, increased energy and spending sprees.

and found that:

(1) The [appellant's] schizophrenia has shown material improvement.

(2) Schizophrenia, manifested primarily by depression, apathy, and vague auditory hallucinations, is productive of no more than severe social and industrial impairment.

*Eli Johns,* BVA 90-____, at 3, 6 (Aug. 28, 1990) (emphasis added). As a result of these findings, the BVA, referencing 38 C.F.R. § 3.343(a) (1990) as support, concluded that "the schedular requirements for a rating in excess of 70 percent have not been met." *Id.* at 7. Appellant filed his appeal with this Court.

II

Analysis

Although the BVA characterized this case as one involving entitlement to an increased rating, the issue involved is whether appellant's reduction in rating was proper. *See Peyton v. Derwinski,* 1 Vet. App. 282, 286 (1991) ("This is a rating reduction case, not a rating increase case"). Title 38 C.F.R. § 3.343(a) (1991) addresses generally reduction in total disability ratings and states in relevant part:

a) *General. Total disability ratings ... will not be reduced ... without examination showing material improvement* in physical or mental condition. Examination reports showing *material improvement must be evaluated in conjunction with all the facts of the record, and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life,* i.e., while working or actively seeking work or whether

the symptoms have been brought under control by prolonged rest....
(Emphasis added.)

Further, a related regulation, 38 C.F.R. § 3.344(a), (c) (1991), titled Stabilization of Disability Evaluations, that the BVA ostensibly neglected to consider, reads in relevant part:

(a) *Examination reports indicating improvement....* Ratings on account of diseases subject to temporary or episodic improvement, e.g. manic depressions or other psychotic reaction, epilepsy, psychoneurotic reaction, ... *will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated....*

(c) *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more).
(Emphasis added.)

■ Read together § 3.343(a) and § 3.344(a), (c), provide that, unless *all* the evidence of record establishes that a claimant's condition has undergone sustained material improvement, a total disability rating that has existed for five years or more may not be reduced on any *one* examination. *See Lehman v. Derwinski,* 1 Vet. App. 339, 341–342 (1991); *Karnas v. Derwinski,* 1 Vet.App. 308, 313–314 (1991).

■ Thus, the issue presented by the application of these regulations to the facts of this case is whether the entire evidence of record prior to the 1989 rating reduction demonstrated a material improvement in appellant's condition that would permit a reduction upon one examination only. In this case, the evidence of record indicates the following: First, appellant's 100% disability rating for mental disorder had been continuously in effect for well over five years. Second, in May 1987, appellant, upon discharge from a VA hospital where he had been treated for over a month, was observed by Dr. Reid to have *no recurrent psychotic thought processes.* Third and most importantly, in October 1988, appel-

lant was examined by another VA physician, Dr. Jotwani, who diagnosed appellant as having *a schizo-affective disorder with psychotic symptoms (i.e., auditory hallucinations, persecutory beliefs) and a possible bipolar affective disorder.* The BVA, while reciting all of these facts in its decision, found, without analysis, that they demonstrated material improvement in appellant's condition, and affirmed the RO's decision. *Johns,* at 3. Based on the above evidence, there is no support for the BVA's finding of material improvement that would justify the RO's 1989 reduction of appellant's 100% rating upon the one 1988 examination. On the contrary, Dr. Jotwani's report (the report that must be relied on to show sustained material improvement if any reduction could be appropriately made under § 3.444(a)) indicates that appellant's condition worsened in that he manifested psychotic symptoms and had possibly acquired an additional mental disorder. Indeed, the Secretary of Veterans Affairs (Secretary) implicitly acknowledges in his motion for remand that there had been no improvement in appellant's condition. MOTION at 2. Where "there is no evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous." *See Karnas,* at 311. As such, it must be reversed.

▮ The Court notes, in passing, that the BVA also failed to consider 38 C.F.R. § 4.16(c) (1991), a regulation relevant to this case, that requires a total disability rating where the claimant is assigned a 70% disability rating for a mental disorder and where such mental disorder prevents him from engaging in substantially gainful employment. *See Karnas,* at 313. Here, the uncontradicted evidence shows that appellant, who has not worked since 1971, was repeatedly found to be unemployable by Dr. Amparo, both in December 1988 and March 1989. The BVA is required to apply all relevant law and regulations even when not raised by appellant. *See Akles v. Derwinksi,* 1 Vet.App. 118, 121 (1991). Because the outcome of this case is not rea-

sonably debatable, summary disposition is appropriate under *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990).

### Conclusion

For the reasons stated above, the motion of the Secretary for remand is denied and the motion of the appellant for summary reversal is granted. The decision of the BVA is reversed and remanded with instructions to restore the appellant's 100% rating retroactive to the effective date of its reduction.