# United States Court of Appeals for the Federal Circuit

---

**CLIFFORD T. HANSER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1974

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-5382, Senior Judge William A. Moorman.

---

Decided:  December 21, 2022

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ELIZABETH MARIE PULLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; Y. KEN LEE, SAMANTHA ANN SYVERSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before MOORE, *Chief Judge*, LOURIE and STARK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* STARK.

Opinion dissenting filed by *Chief Judge* MOORE.

STARK, *Circuit Judge*.

Clifford T. Hanser seeks review of the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") denial of Hanser's challenge to the reduction of his disability rating. The Veterans Court, like the Board, determined that Hanser's rating reduction was not subject to 38 C.F.R. § 3.344, which sets out procedural requirements that must be followed before certain longstanding disability ratings are reduced. We, too, conclude that § 3.344(c) makes the procedures of §§ 3.344(a) and (b) applicable only to disability ratings which have continued at the same level for five years or more. Because Hanser's ratings do not satisfy this condition, we agree with the Veterans Court that § 3.344(c) does not apply to him, and, thus, we affirm.

I

Hanser served in the U.S. Army from October 1979 to October 1999. In April 2012, he was assigned 20% service-connected disability ratings, effective July 26, 2011, for his left leg radiculopathy and his bilateral arm radiculopathy. Thereafter, in March 2014 and November 2015, lumbar and cervical spine examinations showed improvement in his conditions. Consequently, Hanser's Department of Veterans Affairs ("VA") regional office proposed reducing his disability ratings. On March 7, 2016, the VA reduced his disability ratings to 0% for both his left leg and bilateral arm radiculopathy, effective June 1, 2016.

Hanser timely filed a notice of disagreement. Following examinations in October 2017, the VA issued a statement of the case, confirming the disability ratings reductions on December 6, 2017. Hanser subsequently appealed to the Board, which concluded that the procedural protections of 38 C.F.R. § 3.344 did not apply to Hanser and, therefore, affirmed the VA's ratings reductions on April 16, 2019. His subsequent appeal to the Veterans Court ended with a Memorandum Decision affirming the Board's decision on February 23, 2021.

Hanser then timely appealed to our Court. We have jurisdiction pursuant to 38 U.S.C. § 7292(c).

## II

We have exclusive, but limited, jurisdiction to review decisions of the Veterans Court. *See* 38 U.S.C. § 7292(c); *Sullivan v. McDonald*, 815 F.3d 786, 788-89 (Fed. Cir. 2016). "We may review legal questions, including the validity of any statute or regulation or any interpretation thereof." *Sullivan*, 815 F.3d at 788-89. Such legal determinations are reviewed *de novo*. *See Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). We may not, however, review (1) "a challenge to a factual determination" or (2) "a challenge to a law or regulation as applied to the facts of a particular case," unless the challenge presents a constitutional issue. 38 U.S.C. § 7292(d)(2).

"We may set aside any regulation or interpretation thereof if we find it: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (4) without observance of procedure required by law." *Sullivan*, 815 F.3d at 789 (citing 38 U.S.C. § 7292(d)(1)).

"When construing a regulation, it is appropriate first to examine the regulatory language itself to determine its

plain meaning." *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). Regulatory interpretation, like statutory interpretation, "is a holistic endeavor that requires consideration of a [regulatory] scheme in its entirety." *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000) (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454-55 (1993)); *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (applying same interpretive rules to regulations and statutes). "[W]e attempt to give full effect to all words contained within [a] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999). "If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning." *Goodman*, 870 F.3d at 1386.

## III

### A

Hanser's contentions require us to examine 38 C.F.R. § 3.344(c), which identifies the circumstances under which the procedural requirements of §§ 3.344(a) and (b) apply. Therefore, we set out the pertinent portions of these paragraphs:

> (a) *Examination reports indicating improvement.* Rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and Department of Veterans Affairs regulations governing disability compensation and pension. . . . Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. . . . Rating boards encountering a change of diagnosis will exercise caution in the determination as to whether a

change in diagnosis represents no more than a progression of an earlier diagnosis, an error in prior diagnosis or possibly a disease entity independent of the service-connected disability. . . .

(b)    *Doubtful cases.*  If doubt remains, after according due consideration to all the evidence developed by the several items discussed in paragraph (a) of this section, the rating agency will continue the rating in effect . . . .

(c)    *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more).  They do not apply to disabilities which have not become stabilized and are likely to improve.  Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating.

## B

Resolution of this appeal turns on the first sentence of § 3.344(c): "The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more)."  The parties are in agreement that § 3.344(c) is unambiguous.  They disagree, of course, as to the substance of that unambiguous meaning.  Hanser contends that the provision's parenthetical reference to "5 years or more" is not a definition but is, instead, merely a guideline, so a disability rating may qualify as having been unchanged for a "long period" even if it has persisted for less than five years.  *See* Appellant Br. at 16.  The Secretary, by contrast, argues that the parenthetical is a definition, so for purposes of this regulation

a "long period" means five years or more. *See* Appellee Br. at 10-12.

We agree with the parties that § 3.344(c) is unambiguous.[1] We further agree with the Secretary that the parenthetical here is definitional, so the requirements of paragraphs (a) and (b) only apply to ratings that are unchanged for at least five years.

There is no general rule or presumption that a parenthetical is always definitional. Instead, as in many areas of law (and life), context is crucial. Hence, to determine whether a particular parenthetical provides a definition or is "merely an illustrative example," *Novacor Chems., Inc. v. United States*, 171 F.3d 1376, 1381 (Fed. Cir. 1999), we must consider the specific language at issue in the statutory or regulatory context in which it appears and then draw the most sensible conclusion about its meaning. *See, e.g.*, *Becerra v. Empire Health Found.*, 142 S. Ct. 2354, 2362 (2022) (construing parenthetical contained in Medicare payment provision by considering "[t]he text and context"); *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493, 1498 (2022) (construing parenthetical in tax code by considering "the provision's text [and] structure" and

---

[1]   The Veterans Court's inconsistent statements as to whether the parenthetical is a definition do not render the regulation ambiguous. *Compare Simon v. Wilkie*, 30 Vet. App. 403, 410 (2018) ("[A] rating becomes entitled to heightened procedural protections under § 3.344(c) only when it has existed at the exact same percentage for at least 5 years.") *with Lehman v. Derwinski*, 1 Vet. App. 339, 342 (1991) (describing § 3.344(c) in a case in which the rating had been in effect for five years – counting leap days – as a "guideline"). We are not bound by the Veterans Court's decisions. *See Harris v. West*, 203 F.3d 1347, 1350 (Fed. Cir. 2000).

"the broader statutory context"); *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001) (noting that tax exemptions are ordinarily enacted explicitly, not suggestively in parentheticals).

We followed this same approach in *Novacor*, 171 F.3d at 1380-81. After describing the parties' competing positions – that the parenthetical at issue was a definition or just an example – we noted that "general principles of construction support the view that a parenthetical is the definition of the term which it follows" and then considered the specific regulatory language involved. Recognizing that context is key, in *Novacor* we rejected the view that the specific parenthetical was definitional, concluding that the "argument that the parenthetical is merely an illustrative example makes sense." *Id.* at 1381; *see also United States v. Monjaras-Castaneda*, 190 F.3d 326, 330 (5th Cir. 1999) ("We read the parenthetical descriptively based on the general context and structure . . . .").

We do not read our statement in *Novacor* as establishing a presumption that parentheticals are definitions or that a party arguing for a contrary outcome bears a burden greater than that of a party on the other side of the dispute. Again, there is no such presumption.[2] Courts often, but far

---

[2]    Nor, we would add, is there a presumption that parentheticals are *not* definitional, notwithstanding Supreme Court cases that have found particular parentheticals, in particular contexts, to be not definitional. *See Becerra*, 142 S. Ct. at 2365 (concluding that where statute employed "consistent meaning" for term "entitled to benefits," Congress would have not changed that meaning "simply by adding '(for such days)'"); *Boechler*, 142 S. Ct. at 1499 (construing whether provision was jurisdictional and thus applying "the clear-statement rule," imposing extra burden on party seeking definitional reading of parenthetical to show its position is "not only better, but also clear");

from always, determine that a specific parenthetical provides a definition. *See, e.g.*, *Pinellas Ice & Cold Storage Co. v. Commissioner*, 287 U.S. 462, 469-70 (1933) (concluding that parenthetical "expand[s]" meaning of "merger" and "consolidation" beyond their ordinary meaning); *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 314 (4th Cir. 2020) (concluding that parenthetical served "a defining function"). On other occasions, courts that concluded the parenthetical they were evaluating was not definitional still recognized the principle that parentheticals often do provide definitions. *See, e.g.*, *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1353 (Fed. Cir. 2005) ("Statutes frequently define words in a manner that diverges from ordinary meaning. And this can be done through a parenthetical as well as a specific definitional provision . . . ."); *United States v. Coscia*, 866 F.3d 782, 792 (7th Cir. 2017) ("The Supreme Court has read parenthetical language like the language before us today as definitional instead of illustrative.") (citing *Lopez v. Gonzales*, 549 U.S. 47, 52-53 (2006)); *see also* B. Garner, Modern English Usage 752 (4th ed. 2016) (explaining that "parentheses are used in four ways," one of which is to "specify, in one's own running text, an authority, *definition*, explanation, reference, or translation") (emphasis added). The key point, supported by all these authorities, is that a parenthetical sometimes, but not always, supplies a definition, and discerning the effect of any parenthetical requires an assessment of the specific language in context, an analysis we turn to now with respect to § 3.344(c).

C

---

*Chickasaw Nation*, 534 U.S. at 95 (construing parenthetical in context of tax exemption, which "must be unambiguously proved") (internal quotation marks omitted).

We conclude that the parenthetical contained in § 3.344(c) is definitional. Again, the language we are considering is: "The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more)." Read in context, we conclude that this provision directs the VA to accord the procedural protections of paragraphs (a) and (b) to any veteran whose disability rating has lasted for a "long period[]," which the regulation precisely defines as "(5 years or more)." For a veteran to be entitled to the protections of (a) and (b), the veteran's disability rating must have continued at the same level for five years or more.

Section 3.344(c) guides the VA's determinations as to whether procedures that make it more difficult to reduce a rating need to be followed, and it provides that such procedures apply when a rating has been in place, unchanged, for a long period; when these circumstances are present, the regulation makes it harder for the VA to disrupt the veteran's expectations.[3] Without the parenthetical definition, the VA would have to evaluate, on a case by case basis, how long a rating must persist before a veteran is to be

---

[3]    The premise that longstanding ratings should be harder to disturb than more recently-determined ratings is itself longstanding. The regulatory provision that is now § 3.344(c) appeared as early as in 38 C.F.R. § 2.1172(c) (1946), and provided, in part, as follows:

> The above provisions apply to permanent ratings or to those which on account of their long continuance at the same level (five years or more) are on a parity with permanent ratings. Such provisions of regulations and procedure are not for application in the cases of veterans so recently discharged from the service that their disability has not been stabilized.

accorded the procedural benefits of (a) and (b). This total-ity of the circumstances approach may require it to con-sider, for example, whether "long" is determined in relation to the age of the veteran, the amount of time the disability has persisted, its prognosis, or some combination of these (and perhaps other) factors. Our nation benefits from the service of millions of veterans, who (like the civilian popu-lation) suffer from all manner of disabilities, arising in countless, dynamic combinations. By clearly defining the length of time a disability rating must persist before the procedures of (a) and (b) apply, the Secretary has provided a simple rule for VA regional offices to implement in the vast array of circumstances they encounter. For a veteran to be guaranteed the heightened protections of paragraphs (a) and (b), he or she must have a disability rating that re-mains at the same level for at least five years.

The parenthetical in § 3.344(c) does not include the term "e.g." or "for example" or any other indication that it is merely illustrative. Moreover, unlike the situation we confronted in *Novacor*, the remaining language of § 3.344 does not limit or alter what constitutes a "long period." Nor has Hanser identified any reason why the Secretary would have included the parenthetical in the regulation as merely a guideline – especially when "long periods" is already a guideline – and we have been unable to conceive of any such reason ourselves.

Contrary to the dissent's contention, Dissent at 6-7, our conclusion that "5 years or more" is definitional does not render any portion of the first sentence of § 3.344(c) super-fluous. "Long periods," although not strictly necessary, is not superfluous. Its presence gives further context to what the regulation is accomplishing: making it more difficult for the VA to reduce disability ratings that have persisted for what the Secretary has deemed to be a sufficient length of time. On this point, we agree with the Secretary: "the regulation uses parentheticals to add precision, i.e., 'long

periods at the same level' is parenthetically and more fully explained as five years or more."  Appellee Br. at 12.[4]

We agree with Hanser that the regulation could have been written more clearly.  *See* Appellant Br. at 16-17.  Because "5 years or more" is the definition of a "long period" for purposes of § 3.344(c), it would have been preferable if the drafters had simply stated: "The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for 5 years or more."  But the law does not require regulations to be written perfectly and deviations from the ideal do not render them ambiguous.  *See Caraco Pharma. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 416 (2012) ("[T]he mere possibility of clearer phrasing cannot defeat the most natural reading of a statute; if it could (with all due respect to Congress), we would interpret a great many statutes differently than we do.").

Here, the unambiguous meaning of § 3.344(c) is that the requirements of paragraphs (a) and (b) only apply when a disability rating has continued at the same level for five years or more.

D

Hanser contends, and the dissent agrees, that our conclusion that a "long period" is "five years or more" renders the second sentence of § 3.344(c) superfluous.  Appellant Br. at 20-22; Dissent at 7-8.  This second sentence provides that paragraphs (a) and (b) "do not apply to disabilities which have not become stabilized and are likely to improve."  In Hanser's view, if a disability rating that is unchanged for five years always guarantees a veteran the protections of paragraphs (a) and (b), while a disability rating that has persisted for less than five years never gives rise to these protections, the further directive that (a) and

---

4    Neither party argues that the parenthetical contained in § 3.344(c) is a mere afterthought or aside.

(b) do not apply to disabilities that are not stabilized and are likely to improve will never determine the applicability of (a) and (b). This reality, he insists, must mean that our understanding of the first sentence of § 3.344(c) is incorrect.

We are unpersuaded. Whereas the first sentence of § 3.344(c) is concerned with disability *ratings*, the second sentence addresses *disabilities*. Disability *ratings* are the rating agency's assessments of the degree to which a veteran suffers from a particular disability. *See* 38 C.F.R. § 4.1 ("The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations."). *Disabilities* "result[] from all types of diseases and injuries encountered as a result of or incident to military service." *Id.* Together, then, the first two sentences of paragraph (c) provide that the procedures of (a) and (b) apply when *ratings* have continued unchanged for five years or more but do not apply to *disabilities* that are not stable and are likely improve.

There may well be ambiguity as to what a rating agency should do if a veteran presents with a continuous rating of five years or more but also a disability that is not stable and is likely to improve.[5] This case does not require

---

[5]    In *Simon*, 30 Vet. App. at 410, the Veterans Court stated that the second sentence clarifies that the heightened protections of paragraphs (a) and (b) are not applicable to "disabilities where slight improvement is shown, or expected in the future, but when such improvement does not reach a level that warrants a lower rating in terms of a percentage on the rating scale." On this view, without the second sentence, the heightened protections of paragraphs (a) and (b) would still apply to disabilities that may improve slightly but have not yet resulted in a lower rating.

us to dictate to the VA how to resolve such a conflict, should it arise, because Mr. Hanser's disability rating did not persist unchanged for five years.[6] Nor was the issue presented or briefed. It is enough for our purposes to observe that in the absence of the second sentence there would not even be an arguable conflict between the first and second sentences, which tells us that the second sentence is doing something and is not superfluous. Again, we conclude that the first sentence of § 3.344(c) has the unambiguous meaning we have explained above.

The dissent faults our construction for being less pro-veteran than its own. Dissent at 8-9. Our reading of the VA's regulation means that a veteran whose disability rating has been unchanged for five years or more, and whose disability is also stable and not likely to improve, is guaranteed the procedural protections of (a) and (b) before his or her rating can be reduced. Were the dissent's view to prevail, by contrast, veterans with disability ratings that have continued at the same level for five years or more

---

*See id.* Such a view would seem to gain support from the third sentence of § 3.344(c), which provides that reexaminations disclosing improvement in unstable disabilities "will warrant reduction in rating," while if the provisions of paragraph (a) applied in such circumstances "[e]xaminations less full and complete than those in which payments were authorized or continued" could *not* be used to reduce a rating.

[6]    At oral argument, counsel for the Secretary asserted that if such a scenario were to arise, paragraphs (a) and (b) would apply. Oral Arg. at 27:12-29:24. She did not elaborate on her reasoning. Nothing in our decision today should be understood as precluding the VA from adhering to this position and providing the benefits of (a) and (b) to such veterans.

could still be found by the VA to have a disability rating that has *not* "continued for long periods" and, hence, would not obtain the benefits of (a) and (b). The dissent would require *all* veterans to await the VA's case-by-case review before knowing whether (a) and (b) will be deemed applicable. On our view, the only veterans who lack certainty as to whether (a) and (b) apply are those who have both an unchanged rating for five years and also a disability which has not become stabilized and is likely to improve. We do not think it obvious which result, ours or the dissent's, is more or less favorable to veterans. Moreover, as already noted, we are leaving it open for the VA to determine whether the protections of (a) and (b) apply to veterans who have both a stable rating for five or more years and also a disability that is not stable and is likely to improve – if such a veteran presents this issue, as Hanser's case does not. The "anti-veteran" position, which we do not endorse, would be to direct the VA that, under the current regulation, it may *not* apply (a) and (b) to such a veteran.

E

We can easily dispose of Hanser's remaining arguments. He contends that our interpretation of § 3.344 conflicts with 38 C.F.R. § 3.103(a), which requires the VA to "render a decision which grants [the veteran] every benefit that can be supported in law while protecting the interests of the Government." Appellant Br. at 17-18. This statement of policy cannot contradict the plain meaning of a regulation. *See generally First Interstate Bank v. United States*, 61 F.3d 876, 879 (Fed. Cir. 1995) ("The government's policy argument, however, cannot override the plain language of the agreement and the implementing regulations."). As we have held, there are no ambiguities here to be resolved in anyone's favor. Hanser also argues that the second sentence of § 3.344(c) is arbitrary and capricious because it does not provide a standard for determining when a disability is "stabilized" or "likely to improve." Appellant

Br. at 18-22.  Hanser forfeited this argument by not raising it with the Board or Veterans Court.  *See Emenaker v. Peake*, 551 F.3d 1332, 1337 (Fed. Cir. 2008).  Finally, the Veterans Court did not defer to the Board's interpretation of § 3.344(c), which Hanser unpersuasively accused it of doing before seemingly abandoning this contention in his reply brief.  *See* Reply Br. at 17, 26.

We have considered Hanser's additional arguments and find they lack merit.

## IV

It is undisputed that none of Hanser's disability ratings continued unchanged for "5 years or more."  App. 4.  Thus, Hanser does not meet the required minimum period pursuant to § 3.344(c) and is not subject to the provisions of § 3.344(a) and (b).  For the foregoing reasons, we affirm the Veterans Court's decision.

## **AFFIRMED**

### COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**CLIFFORD T. HANSER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1974

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-5382, Senior Judge William A. Moorman.

---

MOORE, *Chief Judge*, dissenting.

The majority interprets § 3.344(c)'s parenthetical as unambiguously definitional. As the government concedes, however, that interpretation renders much of the regulation's language superfluous. That cannot be right. Consistent with the language of the regulation and general principles of construction, "(5 years or more)" is an example, not a definition. I respectfully dissent.

The majority's regulatory interpretation begins with a flawed premise that "general principles of construction support the view that a parenthetical is the definition of the term which it follows." Maj. at 7 (quoting *Novacor Chems., Inc. v. United States*, 171 F.3d 1376, 1381 (Fed.

Cir. 1999)). Although the majority purports to recognize that "there is no presumption" that parentheticals are definitial, Maj. at 7, and that context is crucial—to which I am in violent agreement—its analysis of the regulation at issue makes clear the majority's undeniable starting position is nevertheless that parentheticals are presumptively definitional. Lest there was any doubt as to the majority's approach to this canon of construction, the majority concludes that the parenthetical is definitional because "The parenthetical does not include the terms 'e.g.' or 'for example' or any other indication that it is merely illustrative." Maj. at 10. Then, it faults Mr. Hanser for failing to "identif[y] any reason why the Secretary would have included the parenthetical in the regulation as merely a guideline." *Id.*

This is a beautifully simple case of construction, and the majority is in error as to principles of construction. It is important to note that there are literally thousands of parentheticals in the U.S. Code—so the majority's interpretative approach, in which the person asserting a parenthetical is not definitional bears the burden, is a profoundly broad and flawed method of statutory/regulatory construction which would impact every conceivable area of law. The majority's starting point was clearly that the parenthetical was definitional—there is no such general principle. The majority claims it has not imposed any burden on Mr. Hanser. Maj. at 7. But in faulting Mr. Hanser for failing to identify affirmative indications the parenthetical *is not* definitional, the majority has placed the burden upon him. And in concluding the parenthetical is a definition despite the absence of *any* textual support for that interpretation, the majority gives its unstated presumption dispositive effect. The majority's claim that there is no presumption feels a lot like Obi-Wan's claim, "These aren't the droids you're looking for." And I am no Stormtrooper.

*Novacor*, the only case cited by the majority for its general principle that parentheticals are definitional, cites no

authority for that proposition and actually held the parenthetical at issue was "merely an illustrative example." 171 F.3d at 1381. That dicta, uttered 20 years ago in a single case, has not been followed.[1] And recently, two Supreme Court cases have made clear that "a parenthetical is typically used to convey an aside or afterthought," not a binding definition. *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 142 S. Ct. 2354, 2365 (2022). After noting that parentheticals are usually an "aside or afterthought," the Supreme Court concluded "nothing about the '(for such days)' parenthetical signals anything different." *Id.* The Supreme Court did not begin, as the majority has, from the proposition that there exists a *general principle* applicable to parentheticals that requires treating them as

---

[1] The only other cases cited by the majority do not assert a general rule, but rather conclude, based on other language in the statute and context, that the parentheticals in those statutes were definitional. *See Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 314 (4th Cir. 2020) (interpreting a contractual parenthetical to be definitional where the parenthetical included "i.e." and "substantial other textual evidence" supported the same conclusion); *United States v. Coscia*, 866 F.3d 782, 792–93 (7th Cir. 2017) (holding statute which stated "commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid before execution)" was defining the word spoofing); *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1353–54 (Fed. Cir. 2005) (holding that where the parenthetical actually gives the statutory term a broader meaning than it would ordinarily have, then the term should be understood to include that broader meaning); *Pinellas Ice & Cold Storage Co. v. Comm'r*, 287 U.S. 462, 469 (1933) (holding a parenthetical was definitional where it expanded the meaning of the preceding terms "beyond the[ir] ordinary and commonly accepted" meanings).

definitional.  And importantly, no other court in the country has done so either.

The Supreme Court, again in 2022, confronted a parenthetical and again faced the question of whether it was definitional or merely illustrative.  In *Boechler, P.C. v. Commissioner of Internal Revenue*, the Supreme Court began with the proposition that "a parenthetical . . . is typically used to convey an 'aside' or 'afterthought'."  142 S. Ct. 1493, 1498 (2022) (citing B. Garner, Modern English Usage 1020 (4th ed. 2016)).[2]  After acknowledging this premise, the Supreme Court analyzed the remainder of the text and held that "the broader statutory context confirms the lack of any clear statement."  *Id.*  At a minimum, these cases confirm that there is no general principle of construction that parentheticals are presumed to be definitional.  It was

---

[2]    Though nothing is better than two recent Supreme Court decisions, these are not the first decisions which indicated that parentheticals are *not* generally definitional. *See, e.g., Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) ("The use of parentheses emphasizes the fact that that which is within is meant simply to be illustrative, hence redundant—a circumstance underscored by the lack of any suggestion that Congress intended the illustrative list to be complete."); *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996) ("A parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute.").  The government has itself argued that parentheticals are not normally definitional.  *See* Reply Br. of Plaintiff-Appellant, *United States v. Kassouf*, No. 96-4381, 1997 WL 34609476, at \*18–19 (6th Cir. 1997) (arguing that "if Congress had wanted to override the *usual non-restrictive effect of a phrase set off in parentheses*, it could have used [different] words").

therefore error for the majority's analysis to begin with such a presumption.

To determine whether a parenthetical is definitional or illustrative, context matters: we look to the provision's text and structure to ascertain the meaning of the parenthetical. Here, the structure and text of the regulation affords only one conclusion: that "(5 years or more)" is illustrative, not definitional. Indeed, as the Veterans Court recognized in *Lehman v. Derwinski,* "the regulation is devoid of *any* language which could be construed as intended to establish an inflexible mandatory minimum time period." 1 Vet. App. 339, 342 (1991).[3] And it would have been so easy for the VA to include such language. For example, it could have simply used the abbreviation "i.e." in the parenthetical.[4] It did not use i.e. or e.g., but the related text and structure of the regulation advance the case for the parenthetical being merely illustrative or exemplary. The regulatory section at issue provides:

> **(c) *Disabilities which are likely to improve.*** The provisions of paragraphs (a) and (b) of this section apply to ratings which have

---

[3]    I agree with the majority that the Veterans Court has made inconsistent statements over time about whether this parenthetical is definitional and that we are not bound by these statements. Maj. at 6 n.1.

[4]    The majority relies upon the failure to use "e.g." or "for example" as its basis for concluding that the VA didn't mean this to be an example, but the VA could have just as easily used "i.e." if it intended the parenthetical to be definitional. This was raised by the parties, but the majority never addresses it because it begins from the faulty premise that parentheticals are definitional, and it merely needs to determine whether the VA clearly indicated they should be treated otherwise.

> continued for long periods at the same level (5 years or more).  They do not apply to disabilities which have not become stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating.

Our first context clue is that the parenthetical follows the phrase "long periods."  According to the government and the majority, the parenthetical defines that phrase. The government concedes, however, that such an interpretation renders "long periods" superfluous.  Oral Arg. at 23:06–52.  "The [majority's] reading is thus at odds with one of the *most basic* interpretive canons, that a statute should be construed so that effect is given to *all* its provisions, so that *no* part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009) (emphasis added).

Unlike the government, the majority claims that "long periods" is not superfluous because "although not strictly necessary" it provides context, namely that in the Secretary's view five years or more is a long period.  Maj. at 10–11.  With all due respect, this just makes no sense.  If the government said five years or more, there is no need to let the world know, "oh and by the way, we think five years is long."  It adds absolutely nothing; it is unnecessary and entirely extra, the very definition of superfluous.  The majority cites no regulatory text or context supporting its interpretation and is content to find against the veteran on this issue of construction because it is defaulting to its *general principle:* a parenthetical is a definition unless proven otherwise.

The textual clues do not stop there.  The second sentence of § 3.344(c) explains that whether a rating period qualifies as a "long period" is impacted by other factors such as whether the disability has "stabilized" or is "likely to improve."  That clarification is meaningful only if "(5

years or more)" is exemplary.  Indeed, the government readily admits that, if the parenthetical is a definition, the entire second sentence of this regulation is "*entirely superfluous*," "*irrelevant*," and has "*absolutely no impact*."  Oral Arg. at 28:41–29:19 (Q: "So, if I'm not mistaken, then what you're saying is, if we interpret the 'long period' as five years or more, that is absolute, it decides the question, and the entire next sentence about '[t]hey do not apply to disabilities which do not become stabilized and are likely to improve' is entirely superfluous?  It has absolutely no impact on whether the heightened scrutiny applies?  That five years is it and all the other language in [§ 3.344(c)] is irrelevant?  Is that what you're arguing?"  A: "I think so, yes, Your Honor.").  Again, this offends one of our "*most basic* interpretive canons."  *Corley*, 556 U.S. at 314.

The majority concludes that the second sentence is not superfluous because it deals with disabilities rather than disability ratings.  According to the majority, the second sentence requires that the procedures of (a) and (b) do not apply to disabilities that are not stable and are likely to improve.  Maj. at 12.  As the majority all but concedes, its interpretation would create situations in which the regulation is internally inconsistent.  Maj. at 12 ("There may well be ambiguity [under our construction] as to what a rating agency should do if a veteran presents with a continuous rating of five years or more but also a disability that is not stable and is likely to improve.").

What is the VA to do if a veteran presents with a continuous disability rating of five or more years, but a disability that is not stable and likely to improve?  According to the majority, the first sentence of § 3.344(c) unambiguously entitles the veteran to the procedures of § 3.344(a)–(b), while the second would unambiguously take them away.  We ought not adopt a construction which would render the regulation internally inconsistent and potentially unworkable, especially where there is a reasonable alternative.

As to the relationship between the two sentences, the government itself argued that if the rating is in place for 5 years or more, the veteran gets the heightened procedures of (a) and (b) and that the second sentence of (c) (relating to stability and improvement) has no impact. Oral Arg. at 26:32–27:44; *see also* Oral Arg. at 27:45–28:40. The majority contends that its contrary construction of this second sentence does not preclude the VA from adhering to its position and extending the protections of sections (a) and (b) to a veteran with a disability that has not stabilized or is likely to improve. Maj. at 13 n.6. In doing so, the majority effectively disavows its only argument that the second sentence is not superfluous. The majority also contests whether its construction is anti-veteran, arguing its construction provides more certainty for some veterans while construing the term as exemplary would require a case-by-case determination. Maj. at 13–14. The majority's interpretation may indeed provide more certainty, but certainty that fewer veterans are eligible for the protections of (a) and (b) is hardly a more pro-veteran approach. My construction would extend eligibility for these minimal procedural protections to all veterans,[5] enabling the VA to determine whether an individual veteran's circumstances meet the regulatory criteria. The majority's interpretation

---

[5] The heightened procedures of (a) simply require that a rating in place for a long period shall not be reduced without looking at the medical history and that medical examinations which are relied upon to reduce a rating should be as complete as those that justified the rating. 38 C.F.R. § 3.344(a). The heightened procedure of (b) simply provides that in "doubtful cases" the higher rating shall be left in place. 38 C.F.R. § 3.344(b). These procedures, which the majority strips from this veteran, are quite minimal protections for a veteran already adjudicated to have been rendered disabled by his military service.

results in denying all veterans procedural protections if their ratings have been in effect less than 5 years (including Mr. Hanser at 4 years and 10 months), and possibly denying claims even when the ratings have been in effect longer than five years if the disabilities have not stabilized or are likely to improve. There is simply no question—the majority's construction of these two sentences and how they work together is more anti-veteran than my construction or the government's proffered construction.

Logical, consistent meaning for the entire regulation requires the VA to consider the totality of the circumstances to determine, case by case, whether a veteran's disability is likely to improve or has stabilized. The first sentence sets out the standard: (a) and (b) apply to ratings in place for "long periods." The second sentence gives context: to determine whether a rating has been in place for a sufficiently long period, take into account the nature of the disability, namely whether the disability has stabilized and is likely to improve. There is good reason to believe that the VA purposefully adopted the vaguer "long periods" standard so that it had the flexibility to look at conditions such as whether the disease has stabilized or is likely to improve in determining whether the procedures of (a) and (b) ought to attach—considerations expressly mentioned in the regulation and something the VA is well equipped to do. In the vast array of veterans' disabilities, no doubt there are some that stabilize much sooner than five years and some that will likely improve after five years.

The majority's interpretation of § 3.344(c) leaves no room for the VA to consider those circumstances if a rating decision has, like Mr. Hanser's, been in place for four years and 10 months. Under the majority's construction, if the disability rating has been in place for less than five years, the veteran is not entitled to the protections and if the rating has been in place for five years or more the veteran is also not entitled to the protections if the VA then determines (after a multifactor analysis) that the disability is

likely to improve or has not stabilized.  Given the diverse spectrum of veterans' disabilities, that approach is bad policy.  And it is inconsistent with the plain language of the regulation.

Though the majority cites nothing in the text to support its conclusion that five years or more is definitional, it is no doubt drawn to the simplicity of the rule it adopts—unless the rating has been in place for five years or more, no procedural protections apply.  The only justification offered by the majority is administrative ease of enforcement; there is no text or context which supports its interpretation.  But it is important to note that even under the majority's construction five years does not become a bright line rule.  The majority interprets the second sentence as requiring that the government determine whether the disease has stabilized or is likely to improve anytime a rating has been in place for five years or more.  Thus, under the majority's construction there would be no case-by-case analysis for ratings in place less than five years (all such veterans lose the procedural protections), but there would be exactly this sort of case-by-case analysis for any rating in place five years or more.  Under the majority's interpretation, there is still a multi-factor analysis anytime a rating has been in place for five years or more.  And importantly, the majority's policy-based ease of administration approach is not a substitute for textual analysis of the regulation.

I dissent from the majority's regulatory interpretation.  Mr. Hanser had a consistent, stable rating for his disability for more than 4 years and 10 months; I would vacate and remand for the VA to consider whether the heightened procedures of (a) and (b) apply to Mr. Hanser after considering the factors in 38 C.F.R. § 3.344(c).  The text of the regulation affords only one construction: five years is not a

definitional per se bar[6] and, importantly, there is no pre-sumption that parentheticals are definitional.  The major-ity's approach to parentheticals—starting from its *general principle* that they should be treated as definitional and re-quiring that the veteran prove otherwise—is simply at odds with how any other court has approached this canon of statutory/regulatory interpretation.  This is not a good place for us to be—and the consequences are far reaching.

---

[6]   If the VA prefers a one-time-fits-all period, it can modify its own regulation at any time to make that clear. It would need only insert the letters "i.e." into the paren-thetical and modify the second sentence such that the pro-vision as a whole would not be internally consistent.